**FISK TIRE CO., Inc., v. BLACKBURN TIRE CO.**

No. 4014.

Court of Civil Appeals of Texas. Amarillo.

May 10, 1933.

Rehearing Denied June 7, 1933.

E. O. Northcutt, of Amarillo, for appellant.

Works & Bassett, of Amarillo, for appellee.

JACKSON, Justice.

This suit was instituted in the district court of Potter county by the Fisk Tire Company, Inc., against the Blackburn Tire Company, Inc., on an itemized and verified account for the sum of $1,916.50, and against H. A. Nobles who guaranteed in writing the payment of said account.

The Blackburn Tire Company answered by general demurrer, general denial, and stated under oath that the itemized account attached to plaintiff's petition was not true and correct, and demanded proof of each item contained therein.

In a cross-action the Blackburn Tire Company pleaded that in January, 1930, it was engaged in the business of handling automobile accessories, including the tires of the plaintiff. That in said month plaintiff solicited said defendant to become its warehouseman, and gave notice that, if it expected to continue to handle plaintiff's products in Amarillo, it would be necessary to secure a more suitable location and a larger storeroom, and advised defendant of certain suitable and desirable premises which could be leased. That the defendant, learning the rent on such premises from March 15, 1930, to April 1, 1932, would be $7,590, payable monthly, informed plaintiff that it would be unable to pay said sum and could not assume such rent contract. Thereafter the plaintiff again solicited the defendant to secure the premises for the full term above mentioned, and thereupon it was agreed that the defendant would rent such premises from Louis H. Smith, Inc., by written contract, a copy of which is attached to the cross-action, and plaintiff would immediately thereafter place with the defendant a larger stock of automobile accessories, maintain the stock in such manner as to result in the maximum sales in the Amarillo territory, and give defendant the servicing of busses using Fisk tires in and out of Amarillo for the full term of such lease. That in order to aid the defendant, plaintiff agreed to furnish two salesmen to travel out of Amarillo for the purpose of making sales in the surrounding territory of its products and pay the defendant commissions on said sales. That plaintiff further agreed in writing to repay the defendant one-half of all the rents accruing under the lease until such warehouse was properly opened and installed, and, if for any reason the warehouse was not maintained for such period, the plaintiff would repay the defendant all rents required to be paid under the lease contract. That in pursuance to the agreement, the plaintiff prepared and tendered to the defendant for execution a contract representing that it was its general and usual warehouse contract, and that it would continue in force throughout the period of the lease, and the defendant, without knowing the conditions of such agreement, but relying on the representations of the plaintiff, executed a warehouse contract with the plaintiff.

That plaintiff failed to install and maintain a reasonable amount of merchandise in the warehouse, refused to employ traveling salesmen, breached said contract, and entered the premises about February 1, 1931, and removed therefrom the stock of merchandise it had therein, and has since said date failed and refused to repay the defendant any part of the rent to Louis H. Smith, Inc.

That, by reason of the failure to comply with the contract as alleged, the plaintiff became obligated to pay the defendant certain commissions as set forth in the original contract and supplement thereto, a copy of which is attached to the cross-action, and to repay the defendant one-half of all rents due and owing on said premises. That defendant would not have entered into the rental contract except for the representations and assurances alleged to have been made to it by the plaintiff. That, had the plaintiff maintained the warehouse stock as agreed during the period of the lease, the defendant would have earned and collected $5,000 more in commissions than it received, and, by reason of plaintiff's failure so to do, the defendant was damaged in said sum.

That in addition defendant is obligated on the rent contract for the full period thereon, and plaintiff maintained its warehouse for a period of but ten months, during which the rent amounted to $3,000, leaving a balance of $4,590, for one-half of which the plaintiff is liable to the defendant.

That, as a proximate result of the breach of its agreements by the plaintiff, defendant was damaged in the sum of $1,500 by being deprived of the right of servicing the busses and other vehicles, operating in and out of Amarillo, which used plaintiff's tires. That the defendant serviced certain busses for which it was entitled to $973.05, an itemized account of which it attaches to the cross-action and for which it avers it received no pay or credit.

That from February 1, 1930, to March 15, 1930, the agreements above set out were in the process of execution and are evidenced by different written instruments, including the rental and warehouse contracts, and all of the writings were intended as parts of the general agreement and contract. That the statements contained in the warehouse agreement and other written instruments undertaking to limit the rights of the defendant, and especially subdivisions 14 and 15, of the warehouse agreement, were inserted therein by the plaintiff fraudulently without the knowledge or consent of the defendant and in contradiction of the plaintiff's said written agreement to avoid the effect of the statements and representations inducing the defendant to enter into said contracts and un-

dertakings. That such representations have been ratified and approved by the plaintiff and it is now estopped from seeking to avoid said agreements and obligations or to urge any contrary provisions in the warehouse agreement.

The defendant H. A. Nobles answered by general demurrer, general denial, and adopted the allegations contained in the pleadings of the Blackburn Tire Company.

At the proper time the defendants filed an admission of plaintiff's cause of action with the request to open and conclude, admitting: "That plaintiff has a good cause of action for the amount claimed and shown in its petition and as pleaded by it, except so far as same may be defeated in whole or in part by the facts of the answers of the defendants constituting a good defense which may be established on the trial hereof."

In a discussion in open court between the attorneys for the respective parties and the presiding judge as to the extent and effect of the filing of such admission, the attorney for appellee stated: "The intention bears the admission of $1900 and some odd dollars, less the claim sued on in the cross-action, which is another matter."

The court authorized the defendants to assume the burden and proceed with the trial.

In response to special issues submitted by the court, the jury, in effect, found that the Blackburn Tire Company had made no overcharges against the plaintiff for servicing busses; that prior to the time of the execution of the rental contract on February 17, 1930, the plaintiff agreed to make the Blackburn Tire Company its warehouseman for the Amarillo trade territory; that such agreement was a material inducement for the defendants to enter into the rental contract; that the rental contract was not made for the use and benefit of the Blackburn Tire Company; that the plaintiff agreed to maintain two salesmen in the Amarillo territory while the defendant was acting as plaintiff's warehouseman; that such agreement was a material inducement for the Blackburn Tire Company to enter into the warehouse contract; that the plaintiff failed to maintain two salesmen in said territory and failed to deliver a stock of its products from time to time in quantities reasonably sufficient to supply such territory; that the failure to maintain two salesmen caused the Blackburn Tire Company to lose, up until the time of the cancellation of the warehouse agreement, $869.75; that there would have accrued to Blackburn Tire Company under the warehouse agreement from the time of the cancellation of said contract up to April 1, 1932, with the proper stock and the territory covered by two salesmen, $3,551.80 as commissions; that, if the warehouse contract had not been canceled, the Blackburn Tire Company would have made by servicing busses

an additional sum of $1,400; that D. G. Blackburn at the time he signed the warehouseman's contract did not know that it provided for cancellation by either party upon fifteen days notice, and that he was not negligent in failing to ascertain the contents of said agreement before signing it; that 50 per cent. of the monthly rental for the lease of the premises should be applied to handling the stock reasonably required to be kept on hand under the warehouse contract.

On these findings judgment was rendered to the effect that the plaintiff recover $1,573.-14 from the defendants, and the defendant Blackburn Tire Company recover $5,821.55, from which is deducted the amount of plaintiff's recovery, leaving a judgment in favor of the Blackburn Tire Company for the sum of $4,248.41, with interest at 6 per cent. per annum from the date of the judgment and all costs, from which judgment this appeal is prosecuted.

■ The appellant presents as error the submission by the court to the jury of the issue pertaining to overcharges, because its petition and the exhibit attached thereto alleged a cause of action for the sum of $1,916.-50, which included such overcharges, and, under the admission of appellee that appellant had a good cause of action for the amount claimed, shown, and pleaded, they were not entitled to controvert any item included in said amount.

If appellee did not admit appellant's cause of action and the items aggregating the amount sued for, the burden remained on appellant to establish the contested items, and appellees were not entitled to open and conclude the evidence and argument. Houston & T. C. R. Co. v. Montgomery (Tex. Civ. App.) 185 S. W. 633 and authorities cited.

If there was any question relative to the intention of appellees in making the admission, it is clarified by the statement of their counsel to the effect that the intention was to admit the "nineteen hundred and some odd dollars," but that the admission did not include the cross-action, which was another matter.

The appellees were plaintiffs in their cross-action and had the burden of establishing the damages therein alleged, but were not entitled to open and conclude the evidence and argument without filing proper admission of appellant's entire cause of action. This they did under the record, and appellant was entitled to a judgment under such admission for $1,916.50, with legal interest thereon, and the court erred in reducing the amount of its judgment to the sum of $1,573.14 on the jury's finding pertaining to overcharges.

■■ The appellant presents as error the action of the court in refusing, as requested, to peremptorily instruct a verdict against the appellees on their cross-action, because they

had not sufficiently alleged fraud, accident, or mistake to authorize the admission of testimony under the parol evidence rule to vary the terms of the written contracts, and testimony admitted failed to establish fraud, if sufficiently pleaded.

The appellant failed to secure a ruling of the trial court on its demurrers and exceptions attacking the sufficiency of appellees' allegations of fraud, and under this record any defect in the pleadings will not be considered. Southern Casualty Co. v. Morgan (Tex. Com. App.) 16 S.W.(2d) 533.

There is no complaint in the brief of the ruling of the trial court on admitting any testimony offered on the issue of fraud, but the sufficiency of the testimony to establish fraud is attacked.

The appellees alleged certain arrangements and agreements made prior to signing the contracts, which agreements they say are evidenced by different written instruments which constitute parts of the general agreement, and that sections 14 and 15 of the warehouse agreement were fraudulently inserted to relieve appellant of the obligations of such general agreement.

In order for appellees to recover on their cross-action, it was incumbent on them to show that said sections had been fraudulently inserted in the warehouse agreement.

The lease was entered into on February 17, 1930, between Louis H. Smith, Inc., as lessor, and D. G. Blackburn and H. A. Nobles, as lessees. The appellant is not mentioned in the lease nor is such instrument signed by it.

The warehouse agreement, among other things, provides that appellant will deliver and consign a stock of its products and renewals thereof to the Blackburn Tire Company in Amarillo, Tex. It contains no provision for furnishing or maintaining with appellees any certain quantity of stock, but, on the contrary, stipulates that all shipments of 250 tires or more shall be direct from appellant to the purchaser in the territory served by appellees. It contains no provision for the payment of rents on the leased premises or for the furnishing of salesmen to aid in making sales in the territory. No such provisions are in any of the written instruments introduced.

Sections 14 and 15 of the warehouse agreement are as follows:

"14. The agreement between the parties hereto is fully set forth herein and has been entered into under the inducements and representations herein expressed and no others and shall become effective only when executed by the duly authorized representatives of the Company at its general offices, Chicopee Falls, Mass., and can not be altered, modified or changed except by mutual consent of the parties hereto in writing.

"15. This agreement shall remain in force until cancelled by either party giving to the other fifteen days written notice of its or his intention so to do. If the warehouse dealer shall breach any of the terms or the conditions herein contained, the Company at its option may forthwith terminate this agreement."

This warehouse agreement was delivered to the Blackburn Tire Company for signature. D. G. Blackburn, the president of the tire company, took the agreement to a notary public, before whom he signed and acknowledged it. He testified that it was the usual warehouse agreement. That he made the lease with Louis H. Smith, Inc., for the Blackburn Tire Company. That the appellant furnished sufficient stock at the beginning of their contract to practically fill the warehouse. That he operated under the warehouse agreement for about ten months. The telegrams passing between the Blackburn Tire Company and appellant relative to leasing the building from Louis H. Smith, Inc., show that the $150 per month to be paid by appellant to appellee was "to cease" when Blackburn Tire Company was given the warehouse proposition.

The only fraud relied on was the allegation that sections 14 and 15 had been fraudulently inserted in the warehouse agreement. The testimony is insufficient to sustain this allegation. Appellees pleaded that the general agreement was evidenced by different written instrumnts; hence the judgment in favor of appellees on their cross-action was not warranted.

■ If the testimony had been sufficient to authorize a finding on such issue as fraudulent, appellees would not have been entitled to recover, because such issue, although material to appellees' recovery, was not submitted or requested to be submitted to the jury. International-Great Northern R. Co. v. Casey (Tex. Com. App.) 46 S.W.(2d) 669, and authorities cited.

The judgment is reversed, and the cause remanded.